**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**United States, ex rel. ARIS ETHERLY** )
       Petitioner, )
        )
  v. )
        ) No. 07 C 57
**RANDY DAVIS, Warden,** )
        )
       Respondent. )

<u>MEMORANDUM OPINION AND ORDER</u>

On the night of July 13, 1995, Jeremy Rush was shot and killed in a gang-related incident. Petitioner Aris Etherly, then fifteen, was arrested shortly thereafter, and, after confessing to his involvement in the shooting and leading police officers to the weapon used in the crime, was tried and convicted of first degree murder. After exhausting all of his state remedies, Etherly petitioned this court for a writ of habeas corpus pursuant to 22 U.S.C. § 2254. I granted that petition on August 28, 2009, based on my conclusion that the Illinois Appellate Court had unreasonably determined that Etherly's confession was voluntary. The Seventh Circuit reversed that decision and remanded the case to address the remaining claims Etherly raised in his habeas petition. These claims are: 1) that Etherly was denied a fair trial because the trial court did not *voir dire* the venire about potential gang bias; and 2) that trial counsel was ineffective for failing either to insist that the court probe the gang bias issue on *voir dire* or to question the venire herself on

this issue. The Illinois Appellate Court rejected both of these claims on the merits.

Etherly argues that the Illinois Appellate Court unreasonably applied clearly established Supreme Court precedent when it determined that the trial court did not violate his right to due process and an impartial jury by failing to *voir dire* potential jurors about gang bias. Etherly acknowledges, however, that a trial court has broad discretion in its handling of *voir dire*, "subject to the essential demands of fairness," as indeed the very cases on which he relies have held. *Morgan v. Illinois*, 504 U.S. 719, 730 (1992); *Rosales-Lopez v. U.S.*, 451 U.S. 182, 189 (1981); *Ham v. South Carolina*, 409 U.S. 524, 528 (1973); *Aldridge v. United States*, 283 U.S. 308, 310 (1931). Etherly further concedes that "litigants do not have a right to have a particular question asked," *Gardner v. Barnett*, 199 F.3d 915, 921 (7th Cir. 1999) (citing *Ham*, 409 U.S. at 527), and that the Constitution does not automatically require inquiry into prospective jurors' potential gang bias. *Gardner*, 199 F.3d at 921. Nevertheless, Etherly argues that the Illinois Appellate Court unreasonably applied *Morgan*, *Rosales-Lopez*, *Ham*, and *Aldridge* by declining to hold that the trial court violated Etherly's due process and fair trial rights when it failed to probe each potential juror on the issue of gang bias.

Etherly focuses on the Illinois Appellate Court's treatment of the following exchange:

>THE COURT: Do you want me to ask the question about gangs then?
>
>DEFENSE COUNSEL: Which would be?
>
>THE COURT: There may be some evidence that gang or gang activity may be involved in this case. Would that prevent you from giving either side a fair trial?
>
>DEFENSE COUNSEL: Sure.

*People v. Etherly*, No. 1-01-4166 (Ill. App. 1st Dist. 2006) ("Rule 23 Order") at 8-9.

The Illinois Appellate Court held that although the trial court did not ultimately pose this or any other question relating to possible gang bias, it did not violate the petitioner's right to an impartial jury. The appellate court explained that while the trial court did not itself ask any gang bias questions, it was clear from the record that the court had afforded defense counsel the opportunity to do so.[1] The appellate court thus distinguished the case from *People v. Strain*, 742 N.E.2d 315 (Ill. 2000), in which the trial court's refusal to ask gang bias questions--despite defense counsel's request that it do so--had denied the defendant "an informed and intelligent basis on which to assert challenges for cause or to exercise peremptory challenges." Rule 23 Order at 12, quoting *Strain*, 742 N.E.2d at 323. The Illinois Appellate Court

---

[1] For example, as discussed in the next section, after a particular juror stated that his garage had been sprayed by "gang-bangers," the trial court "made it clear that defense counsel would be allowed to ask additional questions regarding the gang graffiti." Rule 23 Order at 21.

3

viewed the trial court's omission in this case as consistent with *Strain*'s requirement that "when testimony regarding gang membership and gang-related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias," explaining that, "unlike *Strain*, there was no refusal by the trial court to ask gang bias questions of the jury." Rule 23 Order at 14-15.

Etherly insists that this conclusion was objectively unreasonable because it relied on an "implausible" distinction between the *Strain* court's "refusal" to ask a gang question "submitted" by defense counsel and the trial court's "failure" in this case to ask a question "requested" by Etherly's counsel. But even assuming that counsel's tepid response to the trial court's offer to ask "the question about gangs" was tantamount to a request, the appellate court's conclusion that "there was no refusal by the trial court to ask gang bias questions" was based on the record evidence--undisputed by Etherly–that the trial court afforded defense counsel herself the opportunity to do so. That is, the appellate court concluded that the trial court did not so much "refuse" to ask gang bias questions as it left the decision whether to do so in the hands of defense counsel. Etherly cites no authority to suggest that the trial court violated any clearly established constitutional principle by doing so.

4

Etherly next argues that the Illinois Appellate Court unreasonably refused to extend the principles articulated in *Aldridge*, *Ham*, *Rosales-Lopez* and *Morgan* to a different context in which they should apply. But this argument is simply a variation on the previous one and again fails to understand the basis for the Illinois Appellate Court's conclusion that the constitutional principles underlying *Strain* had not been violated.

Finally, Etherly argues that "the fact that the Supreme Court has not yet addressed every subset of conceivable biases," and thus has not specifically held that an inquiry into potential gang bias is required where appropriate, does not compel the conclusion that the trial court did not violate clearly established constitutional precedent. But, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations," *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Illinois Appellate Court thus had broad discretion to determine that the trial court's handling of *voir dire* was consistent with the general principle of *Aldridge*, *Ham*, *Rosales-Lopez* and *Morgan* that *voir dire* must meet "the essential demands of fairness." Etherly has not shown that it exercised that discretion unreasonably in this case.

Because I conclude that the Illinois Appellate Court did not unreasonably determine that the trial court did not violate Etherly's right to due process and a fair trial, I need not proceed to the issue of harmlessness.

I thus turn to Etherly's claim that his trial counsel was ineffective for failing either to insist that the court *voir dire* the jurors about potential gang bias or to probe the issue of gang bias herself. Because the Illinois Appellate Court applied the correct legal standard of *Strickland v. Washington*, 466 U.S. 668 (1984), to this claim, my review of its decision is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). That is, I must first take "a highly deferential look at counsel's performance," *id*. at 1403, in which "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Then, I must view Etherly's claim through the "deferential lens of § 2254(d)." *Pinholster,* 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1418, n. 2 (2009)). That means that the "pivotal question" is not whether "defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). On top of this double deference, I must bear in mind that "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 129 S.Ct. at 1420. *See also Harrison*, 131 S.Ct. at 786 ("[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.") As the

Supreme Court emphasized in *Harrison*: "If this standard is difficult to meet, that is because it was meant to be." 131 S.Ct. at 786. Although § 2254 "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," a federal court's authority to issue a writ of habeas corpus under that section is reserved for cases "where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Id*. This is not such a case.

The Illinois Appellate Court discussed both prongs of the *Strickland* standard and determined that Etherly had shown neither that his trial counsel's performance was constitutionally defective, nor that he had been prejudiced by any shortcomings in his counsel's representation. As to the first prong, the court noted that "defense counsel's decision whether to question potential jurors on a particular subject is considered to be one of trial strategy." Rule 23 Order at 18, citing *People v. Williams*, 295 Ill. App. 3d 456, 469 (Ill. App. Ct. 1998) (applying *Strickland*). The court further observed that defense counsel may plausibly decide, as a matter of strategy, to forego questions that would emphasize "the gang issue," Rule 23 Order at 19, and concluded that Etherly's counsel had done so in this case. *Id*. at 20. The court based its conclusion on several elements of the trial record. First, the court noted that Etherly's counsel "participated actively in the selection of jurors,"

7

and "knew how to formulate questions to ask of the potential jurors," as evidenced by the fact that her questioning of the *venire* consumed over thirty pages of trial record. *Id.* at 20. The court also considered an exchange between Etherly's counsel and a potential juror who mentioned that his garage had been spray painted by "gang-bangers." In response to this comment, Etherly's counsel asked, "[a]nything about that experience that might affect you in this case?" but did not probe the gang issue specifically. *Id.* The court noted that this questioning was followed by a side bar in which the judge "made it clear that defense counsel would be allowed to ask additional questions regarding the gang graffiti, but defense counsel declined to do so." *Id.* at 21. The court construed these elements of the record as reflecting "the defense strategy to very briefly follow up on gang issues when they did arise, but not to affirmatively question each and every juror about possible gang bias." *Id.*

The foregoing belies Etherly's argument that the Illinois Appellate Court based its assessment of counsel's *voir dire* strategy on "pure speculation." To the contrary, the court cited three concrete portions of the trial record as evidence of counsel's strategy. Etherly interprets the record differently, insisting that his counsel merely forgot to pose questions designed to ferret out potential gang bias, or, alternatively, did not appreciate that it was important to do so. But even if Etherly is correct, and the

8

Illinois Appellate Court erred in concluding that Etherly's counsel made a deliberate, strategic decision, the court's interpretation was not so clearly bereft of analysis or any mooring the record that no fair-minded jurist could reach the same conclusion. As for Etherly's argument that the putative strategy itself was foolish, that inquiry is foreclosed at this stage by the "double deference" I owe the decision of the Illinois Appellate Court under § 2254(d).

Etherly's reliance on *Malone v. Walls*, 538 F.3d 744, 761-62 (7th Cir. 2008) and *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007), is ill placed. In *Malone*, the Seventh Circuit reversed the district court's denial of an evidentiary hearing to probe defense counsel's supposed trial strategy of declining to call an exculpatory witness. The court held that nothing in the record suggested a "concrete reason" for the supposed strategy and rejected the State's *post hoc* speculation about why counsel "could have" or "may have" chosen that tack. But the Seventh Circuit's analysis of counsel's performance under *Strickland* was de novo, and "not circumscribed by a state court conclusion." *Malone*, 538 F.3d at 761. And in *Miller*, the Seventh Circuit held that counsel's performance at the petitioner's sentencing was so "non-existent" as to amount to "effective abandonment," and thus fell within the "exceedingly narrow" scope of claims governed not by *Strickland* at all but by *United States v. Cronic*, 466 U.S. 648 (1984), which do not require case-by-case inquiry into prejudice. 481 F.3d at 472-73. Here, the Illinois

9

Appellate Court considered defense counsel's overall representation of petitioner and held that "trial counsel competently defended this case, made a motion to suppress defendant's post-arrest statement, made an opening statement and closing argument, conducted effective cross-examination, properly objected to certain questions, called a witness on behalf of defendant, and made appropriate motions before, during and after trial." Etherly does not contest any of these findings. *Miller* is thus inapplicable.[2]

Etherly's argument that the Illinois Appellate Court unreasonably applied *Strickland*'s second prong is equally without

---

[2] Petitioner's citation in his reply of 5/20/2011 to *Breakiron v. Horn*, ---F.3d---, 2011 WL 1458795, at *13-14 (3d Cir. Apr. 18, 2011), is also unavailing. In *Breakiron*, a member of the venire panel ("No. 114") was present for the questioning of another venire member ("No. 67") who said of the defendant, "I know the boy. I lived in the terrace and he used to do a lot of robbing there." No. 67 went on to affirm that he could not judge the case impartially (Mr. Breakiron was on trial for robbery), and was excused as a juror. No. 114, however, was seated, with no objection by defense counsel. The state courts had rejected the defendant's claim that his counsel was ineffective for failing to challenge No. 114, reasoning that counsel had acted pursuant to a "reasonable trial strategy." The courts based this conclusion on counsel's supposed testimony that he "did not make a motion to strike or move for a mistrial because the seated juror had stated that he could render an unbiased opinion." But the Third Circuit's own review of the trial record revealed that No. 114 had made no such statement, nor had petitioner's counsel testified that he had relied on such a statement. *Breakiron*, 2011 WL 1458795, at *13. To the contrary, defense counsel testified at one point, "I don't know why there was no request for a mistrial." *Id.* at *14. The Third Circuit went on to expose various flaws in the state courts' reasoning that resulted in an unreasonable application of *Strickland*. In this case, by contrast, petitioner does not challenge the Illinois Appellate Court's characterization of the trial record, he simply disputes the conclusions the appellate court drew from that record. He has not demonstrated, however, that the court's conclusions were based on an unreasonable determination of the facts or unreasonably applied *Strickland*.

merit.  Etherly compares this case to *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006), in which the Fifth Circuit reversed the district court's denial of habeas, concluding that the petitioner had been prejudiced by his trial counsel's failure to challenge biased jurors. In *Virgil*, two potential jurors had affirmatively stated that they could not be "fair and impartial" towards the defendant based on specific personal experiences.  Nevertheless, defense counsel did not seek to strike these jurors for cause.  The Fifth Circuit concluded that because the two jurors had "unequivocally expressed their inability to serve as fair and impartial jurors," the presumption that the jury acted according to law was overcome.  Accordingly, the court lacked confidence in the adversarial process that had resulted in the petitioner's conviction and sentence.  446 F.3d at 612-13.

That scenario is a far cry from this case, however.  Unlike in *Virgil*, there is nothing in the record here to suggest actual juror bias.  To establish prejudice, Etherly relies on general observations such those the Seventh Circuit made in *U.S. v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996), and *U.S. v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996), in which the court noted, for example, that evidence of gang membership "can taint a defendant in the eyes of a jury." *Sargent*, 98 F.3d at 328.  But generic statements like these are insufficient to carry the heavy weight of Etherly's burden to prove that the Illinois Appellate Court unreasonably failed to hold that *his* jury--which had been admonished of its obligation to return a "a fair and

11

impartial verdict," Rule 23 Order at 18, and is presumed, under *Strickland*, 466 U.S. at 694-95, to have done so--was so likely biased against him as to undermine confidence in the outcome of his trial. *Strickland*'s prejudice prong sets forth an inherently case-specific inquiry that requires, as the Illinois Appellate Court recognized, an examination of "the totality of the circumstances." Rule 23 Order at 23 (citing *Strickland*, 466 U.S. at 695). Indeed, Etherly cites no case in which a court has found a likelihood of bias sufficient to meet *Strickland*'s prejudice prong based on such non-case-specific considerations, much less a federal habeas court reviewing the issue through the "deferential lens" of § 2254(d).

For the foregoing reasons, Etherly's petition for a writ of habeas corpus and his alternative motion for discovery and an evidentiary hearing are denied.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 20, 2011